**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

MATTHEW B. MICHAELS,                        )
                                            )
                        Plaintiff,          )
                                            )
v.                                          )        CASE NO. 13-CV-1128-CM-KGG
                                            )
CITY OF McPHERSON, KAN., and                )
ROBERT McCLARTY; MICHAEL TERRY;             )
JEFFREY HOUSTON and JOHN DOE,               )
                                            )
                        Defendants.         )
_____ )

## COMPLAINT

COMES NOW Plaintiff, for his causes of action against Defendants, and alleges

and states:

### I. PARTIES

1.      Plaintiff Matthew B. Michaels is a citizen of the United States and a

resident of McPherson County, Kansas.

2.      Defendant City of McPherson, Kansas, is an incorporated municipality

with home rule power under the Constitution of the state of Kansas.  The City of

McPherson may be served with legal process through:  Ms. Tamra K. Seely, City Clerk,

City of McPherson, Kansas, 400 E. Kansas, P.O. Box 1008, McPherson, Kansas

67460.

3.      Defendant Robert McClarty is an individual who may be served with legal

process at his place of employment: McPherson Police Department, 1177 West

Woodside, McPherson, Kansas 67460.

1

4.      Defendant Michael Terry is an individual who may be served with legal process at his place of employment: McPherson Police Department, 1177 West Woodside, McPherson, Kansas 67460.

5.      Defendant Jeffrey Houston is an individual who may be served with legal process at his place of employment: Wise & Reber, LC, 120 N. Main, P.O. Box 134, Hillsboro, Kansas 67063.

6.      Defendant John Doe is unidentified and reasonably believed to be an employee of the City of McPherson and may be one of the above-named individual defendants.

## II. JURISDICTION

7.      This is an employment case arising under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983, the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA" or "ADAAA"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq*., and under the laws of the state of Kansas.  This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.   This Court has supplemental jurisdiction over Plaintiff's pendent state law claims pursuant to 28 U.S.C. § 1367.

8.      The unlawful practices and actions alleged below were committed within the state of Kansas, and venue is properly laid in this Court by virtue of 28 U.S.C. § 1391(b).

9.     Plaintiff has fully exhausted his administrative remedies under the ADA. On March 26, 2013, the U.S. Department of Justice issued a right to institute a civil action under Title I of the ADA. *Matthew B. Michaels v. City of McPherson,* EEOC Charge No. 563-2012-01791.

10.     Plaintiff has fully exhausted his administrative remedies under the Kansas Tort Claims Act, K.S.A. 2011 Supp. 12-105b, by providing written notice of Plaintiff's state law tort claims to the Defendant City on November 7, 2012.

### III.  FACTS

**A.     Matthew Michaels**

11.     Plaintiff Matthew Michaels is a 34-year old male, who is married with four children.

12.     Michaels was employed as a Police Officer by the McPherson Police Department from October 31, 2003 to July 16, 2012, a period of nearly nine years. During Plaintiff's employment, Plaintiff became known as reliable in all situations and as a man of integrity.  From time to time, as a senior Patrol Officer, Plaintiff served as an acting shift supervisor.  In November 2011, Plaintiff successfully completed a special project for Chief McClarty regarding digital tickets, which was never implemented due to budgetary constraints.  Plaintiff was a certified Stinger spike sticks instructor, a stop sticks instructor and a certified dash-camera installation and maintenance officer.

13.     At the time of Plaintiff's initial employment with the McPherson Police Department, the Chief of Police knew that Plaintiff suffered from dyslexia.  Over the

3

years, members of the Police Department were aware of Plaintiff's dyslexia and worked with him to ameliorate its effects on his performance.

14.     Prior to January 12, 2012, the McPherson Police Department made reasonable accommodations regarding Plaintiff's dyslexia.

   A.     Under Chief Shaw, officers were permitted to dictate offense reports for transcription.

   B.     Under Chief McClarty, and since January 12, 2012, except for DUI arrest and felony reports over one-page in length, officers were no longer permitted to dictate reports and were required to personally type reports.

   C.     Chief McClarty prohibited Plaintiff from dictating his reports under the new policy.  As a result, Plaintiff's supervisors criticized Plaintiff's written reports causing Plaintiff to spend a considerable amount of time working on them and correcting them, in an attempt to avoid such criticism.

**B.     McPherson Police Department**

15.     At the time of Plaintiff's discharge from employment, the McPherson Police Department was staffed with approximately 26 sworn police officers.

16.     Dennis Shaw was the Chief of Police from December 2, 2003 until his retirement on October 1, 2011.  Robert McClarty was appointed as Chief of Police and began his employment with the City of McPherson on October 31, 2011.  Assistant Chief Kenneth Gent served as Interim Chief of Police until McClarty's appointment.

4

17.     The Assistant Chief of Police is second in command of the McPherson Police Department.  Kenneth Gent, also known on the Department as "K.T.", was the Assistant Chief of Police until his retirement in June 2012.  Because of Gent's pending retirement, on April 30, 2012, Michael Terry was appointed Assistant Chief of Police, two months early.  Michael Terry had been the Captain of Investigations prior to his promotion.  During the interim period with two appointed Assistant Chiefs, Gent's title was changed to "Outgoing Assistant Chief."

18.     At the time of Plaintiff's discharge from employment, Capt. Todd Martens was the Administrative Captain and Training Officer.  He was also known on the Department as "Big Todd" because Lt. Harris T. Martin went by "Todd."

19.     Prior to the time of Plaintiff's discharge from employment, Lt. Harris "Todd" Martin, also known on the Department as "H.T.", was Plaintiff's shift supervisor.  H.T. Martin was promoted to Captain of Investigations in July 2012, shortly prior to Plaintiff's discharge from employment.

## C.     Plaintiff's Termination

20.     On July 11, 2012, Chief McClarty verbally suspended Plaintiff for two days, for "searching for answers."  See ¶ 78, below.  Subsequently, on July 12, 2012, Capt. Todd Martens and Assistant Chief Terry issued to Plaintiff a written "Final Warning with Suspension" for "Insubordination (Deviating from the Chain of Command) and Dereliction of Duty" falsely alleging that Plaintiff failed to follow Sgt. Brunsell's instructions to get a video from Walmart.  The written warning was delivered to Plaintiff on July 24, 2012, when Plaintiff returned to work from the two-day suspension and his vacation.

21.     On July 16, 2012, Chief McClarty appeared before the City Commission and recommended Plaintiff's discharge from employment.  Based upon Assistant Chief Terry's report and Chief McClarty's recommendation, the City Commission terminated Plaintiff's employment as a Police Officer with the McPherson Police Department.

22.     On July 16, 2012, and again on July 17, 2012, Chief McClarty notified the Kansas Commission on Peace Officers Standards and Training (KS-CPOST), in writing, that the reasons for Plaintiff's involuntary termination from employment were: "Argumentative with Superiors, insubordination, conduct unbecoming an Officer, sleeping on duty, numerous other circumstances and situations where he was no longer viable to be a Police Officer."  Chief McClarty certified, "under penalty of perjury that there [were] no willful misrepresentations, omissions, or falsifications in the information provided. . . ."

23.     On July 25, 2012, Tamra K. Seely, McPherson City Clerk, certified to the Kansas Department of Labor that Plaintiff was discharged by the McPherson City Commission and Chief McClarty for "insubordination and dereliction of duty."

24.     On August 31, 2012, Plaintiff received a telephone call from Kelly Services about an application Plaintiff had made for temporary employment at Hospira. Plaintiff was told that Kelly Services was not going to offer Plaintiff a job because his previous employer had reported that Plaintiff was "unable to follow instructions."

25.     Plaintiff denies the allegations of insubordination, dereliction of duty, conduct unbecoming an officer, argumentative with superiors or that he was "no longer viable to become a Police Officer."  Plaintiff admits that he had previous disciplinary actions for falling asleep while working the "graveyard shift," but that issue was fully

6

resolved and he fully completed all discipline imposed, including serving a probationary period.  Plaintiff has been denied the opportunity to defend his actions or challenge his termination.

**D.     "Sleeping on duty."**

26.     The McPherson Police Department assigns patrol officers to rotating shifts.

27.     In 2007, 2009 and 2010, former Chief Shaw counseled Plaintiff for falling asleep when assigned to 3rd Shift and disciplined Plaintiff with a one-day suspension.

28.     In March 2011, Plaintiff again fell asleep while assigned to 3rd shift.  The March 2011 incident caused Plaintiff to seek medical treatment.  Plaintiff was diagnosed with severe obstructive sleep apnea, the treatment for which included the use of a durable medical device and prescribed medication.

29.     Because Plaintiff had sought medical treatment, Chief Shaw disciplined Plaintiff with a two-day suspension and placed Plaintiff on a 6-month disciplinary probationary period, instead of imposing more severe discipline.  Plaintiff's probationary period expired on October 1, 2011.

30.     Since May 2011, Plaintiff has received medical treatment for his sleep disorder and had no further incidents of falling asleep while working on 3rd Shift.

31.     On July 11, 2012, Assistant Chief Terry prepared a report for Chief McClarty to support Plaintiff's termination, which referred to the prior disciplinary actions Chief Shaw took against Plaintiff for falling asleep while on 3rd shift.

32.     Chief McClarty presented Assistant Chief Terry's report to the City Commission and recommended Plaintiff's termination. Plaintiff's previous counseling

and disciplinary actions related to his sleep disorder were cited as support for Plaintiff's termination, even though Chief McClarty and Assistant Chief Terry knew that (a) the probationary period had expired ten months prior, (b) Plaintiff was under medical treatment for the sleep disorder, and (c) no further incidents had occurred where Plaintiff fell asleep on duty had occurred since.  Chief McClarty did not inform the City Commission of those facts.

**E.    "Fishing for Answers": The Walmart Shoplifting Video**

33.    On July 3, 2012, Plaintiff was dispatched to a shoplifting call at the McPherson Walmart Store.  Kyle Campbell, a Walmart Assistant Manager, and Brin McLees, a Walmart Asset Protection Officer, had apprehended Monica Munoz, a 20+ year old female, for leaving the Walmart Store wearing a pair of sunglasses that she had not paid for.

34.    Munoz was the daughter of Sonya Luttig, the Director of the McPherson Police Department's Animal Shelter.

35.    Brin McLees obtained a confession from Munoz before Plaintiff's arrival.

36.    Plaintiff observed Assistant Manager Kyle Campbell viewing a video of the shoplifting offense and asked Kyle Campbell for a copy because it seemed readily available.  However, Kyle Campbell told Plaintiff that Kendrick Campbell, the Asset Protection Manager, was the person who would have to download and print the copy. Kendrick Campbell was not at work.

37.    On July 4, 2012, at the beginning of Plaintiff's shift, Sgt. Scott Brunsell instructed Plaintiff to get a copy of the Walmart shoplifting video.  Plaintiff said, "Okay,"

but asked Sgt. Brunsell why they were now getting the video tapes, when they never had before. Sgt. Brunsell said, "It's evidence." Plaintiff said, "Duh, but why? We've never done it before in the hundreds of shoplifting cases we've had before." Plaintiff told Sgt. Brunsell that it seemed stupid for such a routine case with a confession. This was the first time Plaintiff had ever been instructed to obtain a video on a routine shoplifting case.

38.     Later on July 4th during Plaintiff's shift, Plaintiff went to Walmart to obtain a copy of the video tape, but learned that both Asset Protection Officer Brin McLees and Asset Protection Manager Kendrick Campbell were on days off.

39.     On July 5th or 6th, Plaintiff again went to Walmart and requested a copy of the video from Brin McLees. McLees said, "Okay," but advised Plaintiff that Kendrick Campbell, her supervisor, was the person who had to burn the copy.

40.     On July 9th, earlier in the day while off-duty, Plaintiff was shopping at Walmart and saw Kendrick Campbell, the Asset Protection Manager. Plaintiff told him that the Department wanted a copy of the Munoz shoplifting video. Kendrick Campbell asked, "What kind of video are you wanting." Plaintiff said, "I don't know. I'm off duty. Call Detective Brinck."

41.     Later on July 9th, after Plaintiff reported to duty, Plaintiff contacted Detective Brinck to give him a "heads up" that he would be contacted by Kendrick Campbell to find out what kind of video he wanted. When speaking with Det. Brinck, Plaintiff asked him why they were now getting video in a routine shoplifting case with a written confession. Det. Brinck told Plaintiff, "Because the prosecutor wants them now."

Det. Brinck sufficiently answered the question that Plaintiff previously asked Sgt. Brunsell.  Plaintiff said, "Okay, thanks."

42.     Prior to this incident, in the 8 ½ half years that Plaintiff was a police officer for the McPherson Police Department, Plaintiff never obtained, nor was he requested or instructed to obtain, a store video in a routine shoplifting case where the suspect was in custody and had confessed.  Plaintiff has obtained video where the suspect had left the store without being apprehended, so that the suspect could be later identified.  Officers have also been instructed to obtain video in "fuel drive-off cases" or where there was damage to property.

43.     In the Munoz shoplifting case:

A.     The value of the property shoplifted, a pair of sunglasses, was under $10.00.

B.     The sunglasses were returned to Walmart's possession after Plaintiff executed a Photo Affidavit Return, which was turned in as evidence.

C.     Prior to Plaintiff's arrival, Walmart employees obtained Munoz' written confession and provided Plaintiff with a copy, which was turned in as evidence.

D.     On the patrol car's dash-camera microphone, Plaintiff recorded the act of giving Munoz a Miranda Warning, obtained an audible confirmation that she understood the warning, and obtained her oral confession to the theft.

E.     Plaintiff notified McPherson County Communications of the time

the Miranda Warning was given.

44.     On July 11, 2012 Chief McClarty suspended Plaintiff for insubordination

and dereliction of duty because Plaintiff questioned the necessity of a video tape as

evidence under the circumstances of the specific case.  Plaintiff was subsequently fired.

See ¶ 20, above, and ¶ 78, below.

45.     Contrary to allegations made against him, Plaintiff did not refuse to obtain

a video tape of the shoplifting incident.  Plaintiff had already requested the video from

Walmart employees on two separate occasions before Plaintiff spoke with Detective

Brinck.  Plaintiff did not go to Det. Brink for the purpose of "going around" Sgt. Brunsell.

Plaintiff did, however, question the specific request for the video with both Det. Brink

and Sgt. Brunsell, given the specific circumstances of the case.

**F.     "Fishing for Answers": The High School Student Project**

46.     On May 17, 2012, Plaintiff was dispatched to assist a citizen in the lobby

of the Law Enforcement Center (LEC).  Plaintiff was contacted by a local high school

student, who requested a fictitious / "John Doe" Standard Offense Report for a class

project.  Plaintiff told the student that he would check into it.

47.     Plaintiff asked Lt. H.T. Martin, who said "No," that it was not normal

procedure.  But, Lt. Martin also told Plaintiff, "You can go check with 'K.T.'", meaning

Assistant Chief Ken Gent, who had been on the McPherson Police Department for 33

years.

48.     As Plaintiff exited Lt. Martin's office and entered the hallway, Plaintiff

encountered Assistant Chief Terry, who asked Plaintiff what he was talking to Lt. Martin

11

about.  When Plaintiff told him, Assistant Chief Terry said, "Do what your lieutenant told you," which Plaintiff understood to mean that he could ask Assistant Chief Gent.

49.     Plaintiff proceeded directly down the hallway to Assistant Chief Gent's office, who was speaking to Chief McClarty.  Plaintiff waited outside Gent's doorway not wanting to interrupt.  After being given permission to enter Gent's office and speak with him, Plaintiff asked Gent about a fictitious report for the student.  Assistant Chief Gent said, "No, we can't do that."

50.     Plaintiff returned to the LEC lobby and told the student the Police Department could not prepare a fictitious report.

51.     Later that night, Chief McClarty gave Plaintiff a verbal scolding, in front of all of the senior management of the McPherson Police Department, for "fishing for answers."  See ¶¶ 70-71, below.  Chief McClarty directed Lt. H.T. Martin to write Plaintiff up before Plaintiff left work that night.

**G.     Request for FMLA Leave**

52.     In 2009, Plaintiff's step-daughter, Hannah James, then age 6, was diagnosed with a serious, lifelong, life-threatening neurovascular disease that required two different brain surgeries and require, at a minimum, annual follow-up appointments with her treating physicians at Children's Mercy Hospital in Kansas City.

53.     Tamra Seely, the City's Assistant City Clerk and FMLA manager at that time, told Plaintiff that she needed a letter with the diagnosis from Hannah's treating physician for Plaintiff's work absences to be covered by FMLA.  Plaintiff provided that documentation for the City.

54.     Chief Shaw told Plaintiff that (a) family was important, (b) when Plaintiff needed time off to attend to Hannah's medical needs to take it, and (c) to make sure that Plaintiff wrote "medical reason" on the written time off request.

55.     All requests for time off were maintained by Assistant Chief Gent before he retired.  The time-off requests are now maintained by Assistant Chief Terry.

56.     In March or April 2012, Plaintiff submitted a written request for time off for May 17 -18, 2012, because Hannah was scheduled for a sleep-deprived electroencephalo-gram (EEG) at Children's Mercy Hospital, in Kansas City.  In keeping with established practice, Plaintiff specifically wrote on the time-off request that the reason for the request was for Plaintiff's step-daughter's medical appointment.  The time-off request was made well in advance of the medical appointment.

57.     When the training schedule came out for May 2012, it showed mandatory training scheduled for the evening of May 17th.  At the time, Plaintiff was assigned to 2nd Shift, working 3 - 11 p.m.

58.     As soon as Plaintiff  saw the training schedule, he spoke with Capt. Todd Martens and told him that Plaintiff had previously submitted a time-off request for medical reasons for May 17 - 18.

59.     Captain Martens told Plaintiff that he would talk to Chief McClarty to see if it was okay for Plaintiff to have the time off.  Capt. Martens told Plaintiff the training was mandatory.

60.     Subsequently, Capt Martens told Plaintiff that Chief McClarty said that Plaintiff could not have the time off.  Plaintiff was required to attend the scheduled training.

13

61.     Plaintiff explained to Capt. Martens that Plaintiff's wife and Plaintiff had to take Hannah to Kansas City for a sleep-deprived EEG, to which Capt. Martens responded, "How hard is it to keep a 10-year old awake in the car?"  Plaintiff further explained the time-line involved for the trip and the nature of the appointment to Capt. Martens, who said he would do what he could for Plaintiff.

62.     Subsequently, Assistant Chief Gent told Plaintiff that he could have one-half day off on the 17th and he could have all of the 18th off.  The training session was supposed to be two hours, from 6 p.m. to 8 p.m. on the 17th.  Plaintiff was to work from 3 p.m. to 8 p.m., the end of the training session

63.     At the beginning of his shift on May 17th, Plaintiff told Lt. H.T. Martin that he was approved to leave at the end of the training session and needed to be "out of here" at 8 p.m.

64.     The training, which was scheduled to last from 6 p.m. to 8 p.m., was about familiarization with new dispatch call procedures, which had no apparent impact on McPherson Police Department procedures.

65.     However, at 8 p.m., rather than concluding the training session, a 15-minute break was given before a question and answer session began.  During the break, Plaintiff told Lt. Jerry Montagne, "Hey, I'm supposed to be out of here."  Lt. Montagne shrugged his shoulders and replied, "It's not over."

66.     Plaintiff went into the hallway and called his wife on his cell phone and told her that the training was not over yet, but he would try to be on his way soon. Plaintiff's wife was waiting for him in the parking lot, with their family loaded in the car for the trip to Kansas City.

14

67.     During the question and answer period, Plaintiff stood at the back of the room, shoulder to shoulder with Darren Frazier, the Dispatch Director.  Frazier was a former McPherson County Sheriff Detective, who Plaintiff had known for a long time and who Plaintiff considered a friend.  Plaintiff whispered / spoke in a quiet voice to Frazier complaining that the meeting was taking too long, that Plaintiff was supposed to be off-duty, on his way to Kansas City for a medical appointment.  Plaintiff did not disturb the meeting. The speaker was in the front of the room answering questions.

68.     At approximately 9 p.m., a second break was taken.  By this time, Plaintiff was irritated.  Plaintiff went into the hallway and again called his wife on his cell phone.  Plaintiff's wife was still waiting for him to get off work.  Plaintiff told her, "This is f*****g bull-s**t.  I'm still here.  Go without me.  I'll drive up later."

69.     After the Dispatch question and answer session, Chief McClarty conducted a Department meeting to give achievement awards and ribbons to officers.

70.     After the awards ceremony, at approximately 9:20 - 9:25 p.m., Chief McClarty called Plaintiff up to the front of the training room.  Besides Plaintiff, Chief McClarty, Assistant Chief Gent, Assistant Chief Terry, Capt. Todd Martens and Lt. H.T. Martin were present.

71.     Chief McClarty, referring to the situation that occurred earlier in the day regarding the high school student's school project police report request, scolded Plaintiff saying, "I will not tolerate you searching for answers - Do what you are told!"  When Plaintiff tried to explain the situation to Defendant McClarty, he cut Plaintiff off and directed Lt. Martin to write Plaintiff up before Plaintiff left work that night.

72.     Plaintiff then told Chief McClarty:

15

> "This training was supposed to be for two hours.  I was supposed to be
> out of here by eight o'clock to take my daughter to Kansas City for a
> doctor's appointment.  I still have two reports to do and my wife's already
> left."

It is Departmental policy to have all reports completed and turned in before being

released from duty.

73.     Chief McClarty *did not* excuse Plaintiff from writing the reports before he

left work that night.

74.     Lt. H.T. Martin gave Plaintiff a written "First Warning", consisting of eight

type-written lines regarding the "high school student request / searching for answers"

incident.

75.     After completing his reports, Plaintiff was finally able to leave work at

approximately 11 p.m., the regular time that his shift ended.  Plaintiff was surprised to

learn that his wife was still waiting for him.

76.     On Monday, May 21, 2012, Plaintiff returned to work following his FMLA

leave and his regular days off.  Before his shift, Plaintiff went to Chief McClarty's office

and told him that he wanted to apologize.  Chief McClarty immediately stopped Plaintiff

and called Assistant Chief Gent into the office.  Plaintiff again told Chief McClarty that

he  wanted to apologize for being abrupt with him, that Plaintiff had been upset because

he had to get his daughter to Kansas City for a medical appointment.  Chief McClarty

did not acknowledge Plaintiff's apology.  Instead, Chief McClarty began asking Plaintiff

questions about his conversation with Darren Frazier on May 17th.  Chief McClarty

asked Plaintiff if he cussed during his conversation with Frazier.  Plaintiff told Chief

McClarty that he did not think so.  Plaintiff did, however, cuss when in the hallway while

16

on the phone with his wife.  Chief McClarty then scolded Plaintiff for "making the Department look bad to outsiders," saying that Plaintiff  was a representative of the Department and that his conduct was unbecoming of an officer.  Chief McClarty verbally suspended Plaintiff for two days.

77.     On May 23ʳᵈ, when Plaintiff returned from suspension, Capt. Todd Martens presented Plaintiff with:

> A.     A *revised* written "First Warning" from Lt. H.T. Martin, now consisting of *seventeen* type-written lines regarding the "high school student request / searching for answers" incident.  The revised warning was post dated to May 17, 2012.
>
> B.     A written "First Warning" from Capt. Martens regarding Plaintiff's conversation with Darren Frazier on the evening of May 17, 2012, at the Dispatch training, dated May 23, 2012.  Capt. Martens falsely reported that Plaintiff was "verbally abusive" and that Plaintiff used loud and profane language in his conversation with Frazier.
>
> C.     A report written by Assistant Chief Gent regarding Plaintiff's apology to Chief McClarty, Plaintiff's conversation with Darren Frazier, and the  "high school student request / searching for answers" incident, dated May 21, 2012.
>
> D.     A written "Final Warning with Suspension," for the two-day suspension on May 21ˢᵗ and 22ⁿᵈ, dated May 22, 2012.

**G.     Suspension and Termination**

78.     On July 11, 2012, Chief McClarty suspended Plaintiff for two days (July 11th and 12th) for "fishing for answers."  Chief McClarty told Plaintiff, "We don't have time to explain why we're doing things.  Just follow orders!"  Chief McClarty told Plaintiff he was going to the City Council [sic] to get Plaintiff terminated.  Plaintiff asked Chief McClarty, "What do I do, get a lawyer or what? This isn't right."  Chief McClarty told Plaintiff, "Go on vacation."  In February 2012, Plaintiff had previously requested to use accrued vacation to travel to Durango, Colorado, from July 13th to July 23rd.

79.     Following Plaintiff's meeting with Chief McClarty, Assistant Chief Terry required Plaintiff to turn in his police identification, ammunition, taser, portable radio and bullet proof vest.  Assistant Chief Terry told Plaintiff that he could turn in the rest of his property when he returned from vacation, *if* he was fired.  Assistant Chief Terry told Plaintiff that Chief McClarty had looked at Plaintiff's file and asked Terry, "Why is this guy still a cop?"

80.     On July 16, 2012, while Plaintiff was on vacation in Durango, Colorado, Chief McClarty called Plaintiff on his cell phone and told Plaintiff that the City Commission voted to terminate Plaintiff's employment.

81.     When Plaintiff returned from vacation on July 24, 2012, Plaintiff was again told that the City Commission terminated his employment.  Capt. Todd Martens escorted Plaintiff to his locker to turn in City property and to permit Plaintiff to obtain any personal property that he had in the locker.  Capt. Martens also watched while Plaintiff

18

cleaned his desk file and he took Plaintiff's Department manuals.   Capt. Martens gave

Plaintiff copies of the following documents:

A.     Final warning with suspension, dated July 11, 2012.

B.     Report by Assistant Chief Terry, which had been provided to the

City Commission, dated July 11, 2011.

C.     Report by Detective Mark Brinck, dated July 10, 2012.

D.     Report by Sgt. Scott Brunsell, dated July 10, 2012.

82.     Also on July 24, 2012, Tamra Seely required Plaintiff to turn in his

Employee Handbook for the City of McPherson, which contained the City grievance

procedure.  Plaintiff was not permitted to leave with a copy of the Employee Handbook.

83.     On July 31, 2012, acting on the advice of his attorney, Plaintiff specifically

requested a copy of the Handbook from the City Clerk under the Kansas Open Record

Act.  Plaintiff was required to pay $10.00 for the very same Handbook that he had been

previously required to turn in.

84.     The next day, on August 1, 2012, Plaintiff requested a grievance hearing

to challenge his discharge from employment.

85.     On August 16, 2012, Jeffrey Houston, City Attorney, informed Plaintiff by

letter that he was not entitled to a grievance hearing regarding his termination.

### IV.  CAUSES OF ACTION

### Count 1:  Civil Rights - Denial of Due Process of Law (Liberty Interest)

86.     Plaintiff incorporates by reference paragraphs 1 through 85 of this

Complaint.

87.     On or about July 11, 2012, Assistant Chief Terry made false statements and misrepresentations impugning Plaintiff's good name, reputation honor and/or integrity in a written report which was published to the City Commission causing Plaintiff's discharge from employment.

88.     On or about July 16, 2012, Chief McClarty made false statements and misrepresentations impugning Plaintiff's good name, reputation honor and/or integrity to the City Commission causing Plaintiff's discharge from employment.

89.     On or about July 16, and again on July 17, 2012, Chief McClarty made false statements and misrepresentations impugning Plaintiff's good name, reputation honor and/or integrity to the Kansas Commission on Peace Officers' Standards and Training (KS-CPOST) regarding Plaintiff's discharge from employment as a police officer.

90.     The Termination Report that Chief McClarty submitted to KS-CPOST regarding Plaintiff's termination is required to be made "available to. . . any law enforcement agency to which the terminated officer applies for a position as a police officer or law enforcement officer," pursuant to K.S.A. 2011 Supp. 74-5611a(d).

91.     Chief McClarty made the above-referenced statements and misrepresentations in the course of termination proceedings and/or the statements and misrepresentations foreclosed Plaintiff's future employment opportunities.

92.     Chief McClarty  knowingly, willfully and with reckless disregard for plaintiff's liberty interest and due process denied Plaintiff the opportunity to be heard at a meaningful time and in a meaningful manner before Plaintiff's discharge from employment with the City of McPherson, Kansas.

20

93.     Plaintiff's right to be to be heard at a meaningful time and in a meaningful manner before his discharge from employment was clearly established at the time of Plaintiff's termination and which should have been reasonably known by Chief McClarty.

94.     Plaintiff's right to a "name-clearing hearing" before an impartial tribunal following his discharge from employment was clearly established at the time of Plaintiff's termination and which should have been reasonably known by Jeffrey Houston, the City Attorney.

95.     After Plaintiff's discharge from employment with the City of McPherson, Kansas, Jeffrey Houston knowingly, willfully and with reckless disregard for Plaintiff's liberty interest and due process denied Plaintiff the opportunity of a "name-clearing hearing" before an impartial tribunal.

96.     Defendants City of McPherson, McClarty and Houston, under color of statute, ordinance, regulation, custom or usage of the state of Kansas and of the City of McPherson subjected, or caused to be subjected, Plaintiff to be denied and deprived of rights, privileges, or immunities secured by the Constitution and laws of the United States, namely, a deprivation of a liberty interest and due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States.

97.     As a direct and proximate result thereof and because of the extremely damaging and stigmatizing statements made by Chief McClarty, Plaintiff's good name and reputation have been substantially and permanently stigmatized and damaged with an attendant foreclosure of comparable future employment opportunities in the criminal justice system with municipal, state or federal government agencies.

21

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment in his favor and against Defendants City of McPherson, Robert McClarty and Jeffrey Houston for the following relief:

A.     For monetary damages in the amount of $750,000.00 to compensate Plaintiff for economic damages, pre-judgment interest, for compensatory damages for past and future non-pecuniary loss;

B.     For appropriate injunctive and/or equitable relief as this Court deems just and proper;

C.     For Plaintiff's reasonable attorneys fees and the costs of this action;

D.     For any such other and further relief this Court deems just and proper.

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment in his favor and against Defendants Robert McClarty and Jeffrey Houston, individually, for punitive damages in the amount of $250,000.00 each.

### Count 2:  FMLA Interference / Retaliation

98.     Plaintiff incorporates paragraphs 1 through 97 of this Complaint.

99.     Plaintiff was employed by Defendant City for a period exceeding one year and worked in excess of 1250 hours in the 12-month period preceding any FMLA leave request made by him.

100.     Defendant City employs 50 or more employees within a 75-mile radius of McPherson, Kansas.

101.     Plaintiff was entitled to FMLA leave because of a serious medical condition of his step-daughter for which intermittent leave is authorized under the Act and which had been previously approved by the Defendant City.

22

102.    Plaintiff properly followed the McPherson Police Department's procedures relating to notice, requesting and designating FMLA leave.

103.    Chief McClarty interfered with, restrained, and/or denied Plaintiff's entitlement to rights under the FMLA, to wit, twelve workweeks of leave within the relevant fifty-two week period, by denying Plaintiff FMLA Leave on May 17, 2012.

104.    Chief McClarty discriminated and retaliated against Plaintiff for verbally opposing the denial of such leave on May 17, 2012, by recommending Plaintiff's discharge from employment to the City Commission.

105.    Plaintiff suffered damages and is entitled to an award of actual damages; liquidated damages, attorneys' fees, costs, and such other and further relief the Court deems just and proper.

WHEREFORE, pursuant to 29 U.S.C. § 2617, Plaintiff Matthew B. Michaels prays for judgment against Defendant City of McPherson as follows:

A.    For wages, salary, employment benefits, or other compensation denied or lost to plaintiff in an undetermined amount; and

B.    For the interest on the amount requested above in ¶ A, calculated at the prevailing rate; and

C.    For an additional amount as liquidated damages equal to the sum of the amount requested above in ¶ A and the interest requested above in ¶ B; and

D.    For such equitable relief as may be appropriate, including employment, reinstatement, and promotion; and

E.    For reasonable attorneys' fees, expert witness fees, costs and such other and further relief the Court deems just and proper.

23

**Count 3: ADA Discrimination**

106.    Plaintiff incorporates by reference paragraphs 1 through 105 of this Complaint.

107.    Plaintiff is a person with a disability because:

    (a)    Plaintiff has a physical or mental impairment that substantially limits one or more of Plaintiff's major life activities and/or the operation of one or more major bodily functions; namely: (1) severe obstructive sleep apnea, which substantially interferes with breathing and substantially limits and interferes with sleeping; and (2) dyslexia, which substantially limits learning, reading and writing.

    (b)    Plaintiff has a record of such impairments; and/or

    (c)    Defendant City regarded Plaintiff as having such impairments.

108.    Plaintiff was a qualified individual who, with or without reasonable accommodations, could perform the essential functions of the position in which he was employed by Defendant City.

109.    Defendant City discharged Plaintiff from employment based upon an actual or perceived disability.

110.    Plaintiff suffered damages and is entitled to an award of damages for back pay and front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment in his favor and against Defendant City of McPherson for the following relief:

24

A.     For monetary damages in the amount of  $750,000 to compensate

Plaintiff for economic damages, pre-judgment interest, for compensatory damages for

past and future non-pecuniary loss;

B.     For appropriate injunctive and/or equitable relief as this Court deems just

and proper;

C.     For Plaintiff's reasonable attorneys fees and the costs of this action;

D.     For any such other and further relief this Court deems just and proper.

**Count 4: Defamation**

111.   Plaintiff incorporates by reference paragraphs 1 through 110 of this

Complaint.

112.   Defendant City is liable for the wrongful acts of its respective agents,

directors, officers, managing members and / or employees.

113.   The actions of defendants McClarty, Terry and John Doe, stated above,

were committed and done within the scope of his employment with the City of

McPherson, Kansas.

114.   Defendants McClarty, Terry and John Doe knowingly, intentionally and

maliciously published false statements or misrepresentations of and concerning

Plaintiff, tending to expose Plaintiff to public hatred, contempt or ridicule and deprive

him of the benefits of public confidence and social acceptance.

115.   As a direct and proximate result thereof and because of the extremely

damaging and stigmatizing statements made by Defendants McClarty, Terry and John

Doe, Plaintiff's good name and reputation have been substantially and permanently

stigmatized and damaged with an attendant foreclosure of comparable future

employment opportunities in the criminal justice system with municipal, state or federal government agencies.

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment against Defendants City of McPherson, Robert McClarty, Michael Terry and John Doe, awarding Plaintiff actual and compensatory damages in the amount of $750,000.00, punitive damages against Defendants McClarty, Terry and John Doe in the amount of $250,000.00, for his attorney fees and costs and for such other and further relief as the court deems proper.

### Count 5.  Civil Conspiracy

116.    Plaintiff incorporates by reference paragraphs 1 through 115 of this Complaint.

117.    Chief McClarty and Assistant Chief Terry, unlawfully and without privilege, conspired with each other to falsely characterize and misrepresent Plaintiff's character and work performance, in written disciplinary actions and investigative reports in an effort to "build a file" to support Plaintiff's termination.

118.    In furtherance of said conspiracy, Chief McClarty and/or Assistant Chief Terry directed subordinate officers to write reports and/or disciplinary actions concerning interactions that they had with Plaintiff.  Said written reports and/or disciplinary actions contained false statements of fact, misrepresentations, mischaracterizations, and/or exaggerations based upon a nugget of truth.  When directing the subordinate officers to write the reports or disciplinary actions, Chief McClarty and/or Assistant Chief Terry told them in advance that they believed Plaintiff's conduct to be insubordinate and/or a dereliction of duty, so as to color the character

26

and manner in which Plaintiff's conduct was to be described and to communicate to the officers the type of reports they wanted.

119.    The actions of defendants McClarty and Terry, stated above, were committed and done within the scope of their employment with the City of McPherson, Kansas.

120.    Defendant City is liable for the wrongful acts of their respective agents, directors, officers, managing members and / or employees.

121.    Defendants Chief McClarty and/or Assistant Chief Terry are jointly and severally liable for the wrongful acts the other committed in furtherance of the conspiracy.

122.    As a direct and / or proximate result of defendants' misconduct, Plaintiff has suffered loss of income, consequential damages, damage to professional reputation, and garden variety emotional distress related to loss of employment, loss of income and damage to reputation.

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment against Defendants City of McPherson, Robert McClarty and Michael Terry, awarding Plaintiff actual and compensatory damages in the amount of $750,000.00, punitive damages against Defendants McClarty and Terry, jointly and severally, in the amount of $250,000.00, for his attorney fees and costs and for such other and further relief as the court deems proper.

### Count 6:  Tortious Interference with Prospective Business
### Advantage or Relationship

123.    Plaintiff incorporates by reference paragraphs 1 through 122 of this

Petition.

124.    Plaintiff had a business relationship or expectancy with the probability of

future economic benefit to plaintiff as a result of his training, education, experience and

state certification as law enforcement officer, which was known by Defendant John

Doe.

125.    On information and belief, but for the conduct of Defendant John Doe,

Plaintiff was reasonably certain to realize the economic expectancy resulting therefrom.

126.    On information and belief,  Defendant John Doe, without justification and

privilege, willfully, wantonly, maliciously and intentionally interfered with prospective

employment opportunities for which plaintiff was qualified and the economic expectancy

resulting therefrom.

127.    The actions of defendants McClarty and Terry  stated above, were

committed and done within the scope of his employment with the City of McPherson,

Kansas.

128.    Defendant City is liable for the wrongful acts of their respective agents,

directors, officers, managing members and / or employees.

129.    As a direct and proximate result the conduct of Defendant John Doe,

plaintiff suffered economic damage.

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment against

Defendants City of McPherson and John Doe, awarding Plaintiff actual and

compensatory damages in the amount of $750,000.00, punitive damages against Defendant John Doe in the amount of $250,000.00, for his attorney fees and costs and for such other and further relief as the court deems proper.

**Count 7:  ERISA - Interference and / or Discrimination**

130.    Plaintiff incorporates paragraphs 1 through 129 of this Complaint.

131.    Plaintiff was a participant in an employee benefit plan which covered the City of McPherson's employees, namely, accrued vacation benefits.

132.    Defendant City interfered with Plaintiff's rights to vacation benefits to which he entitled under the City of McPherson's vacation plan by (a) terminating Plaintiff's employment while he was taking approved vacation and terminating is pay status while on vacation and (b) denying Plaintiff payment for accrued vacation upon termination because of Plaintiff's involuntary discharge from employment.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of McPherson for the following relief:

A.    To recover benefits due to him under the City's vacation plan;

B.    For an award of reasonable attorney fees and costs; and

C.    For such other and further relief as the court deems proper.

### Count 8.  Kansas Wage Payment Act

133.    Plaintiff incorporates by reference paragraphs 1 through 132 of this Petition.

134.    In February 2012, Defendant City approved Plaintiff's request to use accrued vacation time for the period July 13 - July 23, 2012.

29

135.    On July 11, 2012, Chief McClarty ratified Plaintiff's vacation request for the period July 13 - July 23, 2012.

136.    Defendant City terminated Plaintiff's pay status on July 16, 2012, while Plaintiff was in the middle of his approved vacation, denying Plaintiff vacation pay for the remaining days that he was on vacation, which was due to be paid to Plaintiff on the next designated payday.

137.    Defendant City further denied payment of any remaining accrued vacation time following Plaintiff's termination from employment, claiming that such vacation was forfeited by Plaintiff's involuntary termination from employment.

138.    Defendant City was required to pay to Plaintiff all wages due to him on each designated payday, pursuant to K.S.A. 44-314.

139.    Upon Plaintiff's termination of employment, Defendant City was required to pay to all earned wages not later than the next regular payday following Plaintiff's termination date, pursuant to K.S.A. 44-315(a).

140.    Defendant City willfully failed to pay to Plaintiff all wages owed to Plaintiff for accrued vacation time and is liable to Plaintiff for the wages due and for a penalty of 1% of the unpaid wages for each day, except Sunday and legal holidays, after the eighth day of such failure or in an amount equal to 100% of the unpaid wages, whichever is less, pursuant to K.S.A. 44-315(b).

WHEREFORE, Plaintiff Matthew B. Michaels prays for judgment against Defendant City of McPherson as follows:

A.    For unpaid wages in an undetermined amount;

B.    For a penalty in an undetermined amount;

30

C.      For costs; and

D.      For such additional and further relief as the court deems just and proper.

Respectfully submitted,

AYESH LAW OFFICES

By:/s/ Ray E. Simmons
    Ray E. Simmons, #12296
    Mark G. Ayesh, #10175
    8100 East 22nd Street North
    Building 2300, Suite 2
    P. O. Box 781750
    Wichita, KS   67278-1750
    Telephone:  316-682-7381
    Email: rsimmons@ayesh.kscoxmail.com
        *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

## DESIGNATION OF TRIAL

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.

By: /s/ Ray E. Simmons
    Ray E. Simmons, #12296
        *Attorneys for Plaintiff*

31