IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MATTHEW B. MICHAELS,** )<br> )<br>    **Plaintiff,** )<br> )<br>v. )<br> )<br>**CITY OF McPHERSON, KANSAS,** )<br>**AND ROBERT McCLARTY,** )<br> )<br>    **Defendants.** )<br>_____ ) | Case No. 13-1128-CM |

## MEMORANDUM AND ORDER

This matter is before the court on two motions: (1) plaintiff's motion for partial summary judgment (Doc. 72) on Counts I and VIII; and (2) defendants' motion for summary judgment (Doc. 74) on all remaining counts, including Counts I–IV and VIII, as described below.

In Count I, plaintiff Matthew B. Michaels brings a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment against defendant Robert McClarty, Chief of Police, and the City of McPherson, Kansas ("the City") for denial of due process of law and violation of his liberty interest for McClarty's statements in a Kansas Commission on Peace Officers' Standards and Training ("KS-CPOST") report and for defendants' failure to provide plaintiff with any pre-termination or post-termination name-clearing hearing. Count II is plaintiff's Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., interference claim against the City for its denial of plaintiff's FMLA leave request for May 17, 2012.[1] In Count III, plaintiff brings a discrimination claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., alleging the City discriminated against him by basing his termination on his sleep apnea and by including reference to him "sleeping on duty" in

---

[1] Plaintiff's complaint also listed a retaliation claim under Count II, but plaintiff states in his response to defendants' motion for summary judgment that he withdraws and abandons that claim. (*See* Doc. 81 at 52.)

-1-

the KS-CPOST report.[2]  In Count IV, plaintiff brings a defamation claim against McClarty and the City for McClarty's statements made to the City Commission.  Plaintiff abandoned counts V–VII. (*See* Doc. 70 at 32.)  In Count VIII, plaintiff alleges that the City violated the Kansas Wage Payment Act ("KWPA"), Kan. Stat. Ann. § 44-313, et seq., by failing to pay plaintiff for his accrued vacation time.

## I.   Factual Background

Plaintiff was employed by the City as a police officer for almost nine years.  The City Commission terminated plaintiff's employment at a City Commission meeting upon McClarty's recommendation.  McClarty then submitted a report to the KS-CPOST stating the following reasons for plaintiff's termination: "Argumentative with Superiors, insubordination, conduct unbecoming an Officer, sleeping on duty, numerous other circumstances and situations where he was no longer viable to be a Police Officer."  (Doc. 76-10 at 2.)

After plaintiff had three at-fault motor vehicle accidents while working the third shift from April 30, 2006, to July 2, 2007, former Police Chief Dennis Shaw placed plaintiff on a one-year evaluation on or about July 9, 2007.  On August 18, 2010, plaintiff was suspended without pay for repeated violations of sleeping on the third shift.  Plaintiff was later suspended for two days without pay and placed on probation for six months after he was observed asleep in his patrol car.  After this incident, plaintiff sought medical attention and was diagnosed with obstructive sleep apnea.  Plaintiff received medical treatment, and he had no further incidents of falling asleep while on duty.  Plaintiff did not file grievances for any of the instances.  On May 14, 2012, plaintiff was also issued a written warning for wearing the incorrect dress uniform pants for an All Schools Day Parade.

---

[2]  Plaintiff's complaint and the pretrial order also included an argument that plaintiff was discriminated against based on dyslexia; however, plaintiff's response does not address this claim.

Although the court need not go into detail for the purposes of this motion, there is another incident in which a local high school student asked plaintiff if he could procure a fictitious offense report for a class project. Plaintiff asked several of his superiors for permission to provide the report, and was told no. The specifics of the conversations are in dispute, but defendants argue that plaintiff was "fishing for answers" regarding the report, which plaintiff denies.

Plaintiff's stepdaughter was diagnosed in 2009 with a permanent serious health condition. Plaintiff alleges he applied for FMLA leave on May 17–18, 2012,[3] to take his stepdaughter to Kansas City for a sleep-deprived electroencephalogram ("EEG") with check-in scheduled for 11:45 a.m. on May 18. Plaintiff and his wife were instructed to keep his stepdaughter awake until midnight on May 18 and wake her up at 4:00 a.m. Plaintiff applied for leave under a practice established under former Chief Shaw, which required plaintiff to request vacation leave and note the reason for leave on the Day(s) Off Request. Plaintiff submitted a Day(s) Off Request for May 17–18 and wrote "Hannah appt. KC EEG" on the form. Plaintiff's plan was to travel with his wife and their entire family to Olathe, Kansas, on May 17 to stay with a family member so they could follow the sleep protocol for the EEG. The City required employees to use accrued vacation leave for FMLA leave associated with a spouse or child.

McClarty, Shaw's successor, refused to grant leave on May 17 because of a mandatory departmental training. Plaintiff received approved Overtime Adjustment Hours, allowing him to leave the shift after the training was completed, anticipated to be at about 8:00 p.m. Plaintiff attended the training. During a break in the training, plaintiff complained to the McPherson County 911 Director Darren Frazier, who was conducting the training, that the training was taking too long. The training ran longer than anticipated, and afterward McClarty conducted a departmental meeting and gave out some commendations. McClarty then verbally reprimanded plaintiff for an incident that happened

---

[3]   All subsequent references to "May 17" or "May 18" refer to those dates in 2012.

earlier in the day. Plaintiff complained to McClarty that he should have been released to leave for his stepdaughter's appointment. Plaintiff was not released to leave until approximately 11:00 p.m., after a written warning was prepared.

Plaintiff and his family left directly from the Law Enforcement Center and drove to Olathe, Kansas. Plaintiff drove and his wife kept his stepdaughter awake until midnight, when she let her go to sleep. They arrived in Olathe at around 1:45 a.m. on May 18. Plaintiff woke up his stepdaughter at 4:00 a.m. as required, and his stepdaughter made it to the appointment as planned. Plaintiff did not file a grievance regarding the leave denial. Plaintiff returned to work on May 21, 2012, and was suspended for two days without pay for "insubordination" and "conduct unbecoming an officer." Plaintiff did not file a grievance regarding the suspension.

Another disciplinary incident in dispute involves plaintiff's response to an order to retrieve video surveillance of a shoplifting incident at Walmart in which the suspect confessed. Plaintiff maintains he followed the necessary steps to retrieve the video, but he admits he said the requirement to retrieve the video was "stupid." He also asked superiors on two different occasions why it was necessary to obtain the video. McClarty was told that plaintiff was again "fishing for answers" after the video incident.

McClarty suspended plaintiff for two days for "insubordination" and "dereliction of duty" on July 11, 2012. McClarty told plaintiff that McClarty was going to go to the City Commission on July 16, 2012, to recommend his termination. Neither McClarty nor Assistant Chief Terry informed plaintiff of any procedure to challenge a termination. McClarty contends that he told plaintiff he could attend the City Commission meeting, but plaintiff argues that McClarty told him he should go ahead on his already-scheduled vacation. Terry then required plaintiff to turn in his equipment he was

carrying or wearing and told him he could return the remainder of the City's property upon his return from vacation, if he was fired. Plaintiff was escorted from the Law Enforcement Center.

Plaintiff was terminated by the City Commission on July 16, 2012, solely based on McClarty's recommendation. Captain Martens gave plaintiff a copy of the written disciplinary action regarding his termination. Plaintiff submitted a written request for a grievance hearing to contest his termination on August 2, 2012. On August 16, 2012, the City Attorney told plaintiff he was not entitled to a grievance hearing because he was terminated by the City Commission and because his request was untimely. Plaintiff is now employed as a security guard at Hospira by U.S. Security Associates.

Plaintiff had approved vacation from July 13–23, 2012. Plaintiff alleges that he had already taken two days out his vacation out-of-state when he was notified that the City Commission terminated his employment and pay on July 16, 2012. Plaintiff alleges that the City terminated his vacation pay after the second day, causing him to forfeit five days of earned vacation pay and violating the KWPA. The City argues that plaintiff was discharged before taking any vacation.

## II.   Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.    Analysis**

      **A.  Count I: § 1983 and Fourteenth Amendment Liberty Interest Claim**

          **1.        Liberty Interest Claim Elements**

Plaintiff brings a claim under § 1983 and the Fourteenth Amendment, alleging that defendants violated his due process rights in his liberty interest when McClarty made certain statements in the KS-CPOST report in connection with plaintiff's termination without providing plaintiff with a name-clearing hearing.  On the KS-CPOST report, McClarty listed the following reasons for plaintiff's termination: "Argumentative with Superiors, insubordination, conduct unbecoming an Officer, sleeping on duty, numerous other circumstances and situations where he was no longer viable to be a Police Officer."  (Doc. 76-10 at 2.)  Plaintiff claims these statements were false and stigmatizing, damaged his reputation and good name, and foreclosed his comparable future employment opportunities as a law enforcement officer.

Under Kan. Stat. Ann. § 74-5611a(a), KS-CPOST "shall establish and maintain a central registry of all Kansas police officers or law enforcement officers."  This registry "is to be a resource for all agencies . . . to use when reviewing employment applications of such officers."  Kan. Stat. Ann. § 74-5611a(a).  A KS-CPOST report is required by Kan. Stat. Ann. § 74-5611a(d) to be made upon termination of an officer, and the report must be made available to law enforcement agencies to which the terminated officer later applies for employment as a police officer or law enforcement officer.  The terminated officer may submit a written statement in response to the termination and the statement is to be included in the officer's registry file.  Kan. Stat. Ann. § 74-5611a(d).  Defendants argue that the statutory right to submit a statement in response to the KS-CPOST report is all the due process to which plaintiff is entitled.

"'[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981). "The Supreme Court's decision in *Board of Regents v. Roth* . . . and *Perry v. Sindermann*, 408 U.S. 593 (1972) . . . established the right to a name-clearing hearing for a government employee allegedly stigmatized in the course of his discharge." *Eames v. City of Logan*, 762 F.2d 83, 85 (10th Cir. 1985).

To succeed on his liberty interest claim, plaintiff must show that the statements made in the KS-CPOST report by McClarty: 1) impugn plaintiff's good name, reputation, honor, or integrity; 2) are false; 3) occurred in the course of terminating plaintiff or must foreclose other employment opportunities; and 4) are published. *See Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). All of these elements must be met to establish a claim. *Id.*

Here, there is no question that the statements occurred in the course of plaintiff's termination. And plaintiff has raised genuine issues of material fact as to whether defendant McClarty's statements impugned plaintiff's good name, reputation, honor, or integrity; were false; and whether the statements have foreclosed or will foreclose other employment opportunities. This is true especially when considering McClarty's statement that plaintiff was terminated for "numerous other circumstances and situations where he was no longer viable to be a police officer." (Doc. 76-10 at 2.)

Defendants argue that the KS-CPOST report does not meet the publication requirement. But the court is not convinced. Defendants cite cases dealing with intra-government dissemination of information. *See, e.g.*, *Asbill v. Hous. Auth. of Choctaw Nation*, 726 F.2d 1499, 1503 (10th Cir. 1984) ("[I]ntra-government dissemination, by itself, falls short of the Supreme Court's notion of publication: 'to be made public.'"); *see also Isengard v. N.M. Pub. Educ. Dep't*, 708 F. Supp. 2d 1190, 1201–02 (D.N.M. 2009) (discussing Tenth Circuit cases finding that intra-governmental disclosure of

information does not meet the publication requirement). But the fact that the KS-CPOST report is available to any law enforcement agency (and not just the City of McPherson Police Department) to which plaintiff applies for a position makes this case different than those relied on by defendants. *See Cox v. Roskelley*, 359 F.3d 1105, 1112 (9th Cir. 2004) (holding that placement of stigmatizing information in the plaintiff's personnel file constituted publication in the liberty interest context when a state statute mandated release of the information upon request); *see also Buxton v. City of Plant City*, 871 F.2d 1037, 1046 (11th Cir. 1989) ("[T]he presence of stigmatizing information placed into the public record by a state entity, pursuant to a state statute or otherwise, constitutes sufficient publication to implicate the liberty interest . . . .").

### 2. Qualified Immunity Defense

Regardless, defendants assert that McClarty is entitled to qualified immunity. A public official is entitled to qualified immunity unless the plaintiff can show that (1) the official violated the plaintiff's constitutional rights; and (2) the rights were clearly established. *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1250 (D. Kan. 2004) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

At the summary judgment stage, an analysis of whether qualified immunity exists differs from typical summary judgment analysis. *Thomas v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (citation omitted). When a defendant raises the defense of qualified immunity at the summary judgment stage, the burden then shifts to the plaintiff to establish that the two elements are met as described above. *Id.* (citations omitted). The plaintiff must meet this "heavy two-part burden" to show that the defendant is not entitled to qualified immunity. *See Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). "In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving

party." *Thomas*, 584 F.3d at 1312 (citations omitted); *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) ("The plaintiff must demonstrate *on the facts alleged* both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity.") (emphasis added). But the facts alleged by plaintiff must be supported by the record. *Id.*

After proving a constitutional violation occurred, the plaintiff must then prove that the right at issue was clearly established at the time of the defendant's actions. *Gross*, 245 F.3d at 1155–56 (citing *Albright*, 51 F.3d at 1534). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Id.* (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (internal quotation marks omitted)) (alteration in original). It is not necessary that the exact situation has been addressed; rather, it must be apparent "in the light of pre-existing law" that the actions are unlawful. *Wilson*, 526 U.S. at 615 (citation omitted). The court analyzes whether the right is clearly established "in light of the specific context of the case, not as a broad general proposition." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation and quotation marks omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation and quotation marks omitted).

If the plaintiff does not satisfy both inquiries, then the defendant is entitled to qualified immunity. *See Gross*, 245 F.3d at 1156. But if the plaintiff establishes that the defendant violated his

clearly established rights, then the defendant must then prove that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. *Id.* (citation omitted).

Here, plaintiff has alleged facts showing that his liberty interest in a name-clearing hearing was denied, as described above. In general, the court finds it is clearly established that a terminated employee is entitled to a name-clearing hearing if there is public disclosure of the reasons for termination, which are false and stigmatizing and damage the plaintiff's reputation and good name. *See Eames*, 762 F.2d at 85 (citing *Roth* and *Perry*).

But here, plaintiff addresses only whether his right to a name-clearing hearing was clearly established. (*See* Doc. 81 at 38–40.) Plaintiff does not address whether McClarty's actions were objectively reasonable and whether a reasonable officer would understand he was violating plaintiff's rights by making the statements in the report. Plaintiff cites cases standing for the broad proposition that due process requires pre-termination and post-termination procedures, but he does not cite any cases analyzing the more narrow issue of statements like McClarty's made in a statutorily-required report.

Elsewhere in his response brief, plaintiff argues that the court should compare plaintiff's disciplinary history with the reasons stated for his termination, and conclude that the "numerous other circumstances" language is false because there are no other circumstances other than those listed in his disciplinary history. (*See* Doc. 81 at 34.) Plaintiff has not cited to evidence showing that plaintiff's disciplinary file was submitted with his KS-CPOST report. The report mentions only the following reasons as explanation for plaintiff's termination: "Cause: Argumentative with Superiors, insubordination, conduct unbecoming an Officer, sleeping on duty, numerous other circumstances and situations where he was no longer viable to be a Police Officer." (Doc. 76-10 at 2.) The court cannot conclusively say that a reasonable officer would know that including this statement in the KS-CPOST

-10-

report would violate plaintiff's due process rights, especially without showing that the report also included a detailed list of plaintiff's disciplinary history.

Plaintiff's burden in defeating McClarty's qualified immunity defense is a heavy one, as described above. Plaintiff has not met his burden, as he did not show that it was sufficiently clear that these statements would violate plaintiff's rights and entitle him to a name-clearing hearing. Further, plaintiff has not shown that a reasonable officer would know that making the statements detailed above on a statutorily-required report would entitle the terminated officer to a name-clearing hearing. As a result, the court determines that McClarty is entitled to qualified immunity as to this claim and enters summary judgment in McClarty's favor.

### 3. The City's Liability Under § 1983

As a final matter, the court notes that the City did not address plaintiff's argument that it is subject to municipal liability under § 1983 because plaintiff was fired by the City Commission and it is the City's policy to not provide a name-clearing hearing under these circumstances. Because the City did not address this issue, the City has not met its burden to show it is entitled to judgment as a matter of law and the court cannot grant summary judgment as to the City.

### B. Count II: FMLA Interference Claim

Genuine issues of material fact preclude summary judgment on plaintiff's FMLA interference claim. Both plaintiff and defendant move for summary judgment on this claim. Under 29 U.S.C. § 2612(a)(1)(C), an eligible employee is entitled to FMLA time to take care of a child who has a serious health condition. Plaintiff's stepdaughter qualifies as his child under the statute. *See* 29 U.S.C. § 2611(12). A prima facie case of FMLA interference requires plaintiff to establish that (1) he was entitled to FMLA leave; (2) an adverse action of his employer interfered with his right to FMLA leave; and (3) the adverse action was related to plaintiff's exercise or attempted exercise of his FMLA rights.

-11-

*See Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005) (citing *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004)). It is undisputed that plaintiff was entitled to FMLA leave for May 18; the leave request for May 17 is in dispute.

Here, the second element is met, as the City denied plaintiff's FMLA leave request for May 17. *See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) ("In order to satisfy the second element of an interference claim, the employee must show that she was prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave.") (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1181 (10th Cir. 2006)). And the third element is met, as the denial of FMLA was directly related to plaintiff's exercise or attempted exercise of his FMLA rights.

At issue is whether plaintiff was entitled to take FMLA leave on May 17 for his daughter's appointment scheduled for May 18 at noon. The City argues that plaintiff's request for the day off on May 17 was merely for convenience and not necessity. The City further argues that the request was a vacation day. But the case cited by defendant is inapplicable, as it dealt with an employee who the court determined was not entitled to FMLA leave to care for her disabled spouse during a trip to the Philippines to receive "faith-healing" where "nearly half of the . . . trip was spent visiting friends, family, and local churches." *See Tayag v. Lahey Clinic Hosp., Inc.*, 677 F. Supp. 2d 446, 452 (D. Mass. 2010).

Plaintiff has produced evidence showing that his stepdaughter's sleep-deprived EEG required a specific sleep protocol and that the travel time from McPherson to Kansas City required several hours in the car with not only plaintiff's stepdaughter, but plaintiff's wife and other children. Plaintiff's care for his stepdaughter was not an "incidental consequence" of plaintiff's leave request; instead, plaintiff

-12-

has put forth evidence that the leave request was solely to get his stepdaughter to her scheduled medical appointment on May 18 and comply with the sleep protocol.

"The FMLA was enacted 'to allow workers flexibility in scheduling time off to deal with family and medical problems and alleviate some of the tension created by the competing demands of work and family.'" *Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 498 (D. Md. 2011) (quoting *Scamihorn v. Gen. Truck Drivers*, 282 F.3d 1078, 1082 (9th Cir. 2002) (citation omitted)). It is necessary to determine whether plaintiff's leave request for May 17 was to "care for" his stepdaughter. *See id*. (citing 29 U.S.C. § 2612(a); *Sharpe v. MCI Telecomms. Corp.*, 19 F. Supp. 2d 483, 488 (E.D.N.C. 1998)). As stated in 29 C.F.R. § 825.124, "an employee is 'needed to care for' a family member . . . [when], for example, because of a serious health condition, the family member is . . . unable to transport himself or herself to the doctor." Here, plaintiff has put forth evidence that he needed to care for his stepdaughter by driving with his wife and family the day before the stepdaughter's medical appointment.

Under 29 U.S.C. § 2612(e)(2), the employee must "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer, subject to the approval of the health care provider . . . ." Both parties moved for summary judgment on this claim. But the court cannot grant summary judgment at this stage, as there is a genuine issue of material fact regarding whether plaintiff missing training would disrupt unduly the operations of the City. Plaintiff put forth evidence that the training was not mandatory and could be reproduced or repeated, or that the pertinent information could otherwise be extracted without requiring plaintiff's attendance. And the City acknowledges there is a question of fact as to whether plaintiff's request for leave on May 17 would have unduly disrupted the police department. (*See* Doc. 82 at 6–7 ("[I]t is at least a question of fact whether his request off for May 17 presented and [sic] undue disruption of the operations McPherson

-13-

Police Department.").)  The City contends that summary judgment is appropriate in its favor on this issue, but the material question of fact also precludes finding in the City's favor.  As a result, both plaintiff and the City's motions for summary judgment are denied as to this claim.

### C.  Count III: ADA Claim

To establish a prima facie case of discrimination on the basis of disability under the ADA, plaintiff must prove that he: (1) is disabled within the meaning of the ADA; (2) is qualified for the position, with or without reasonable accommodation; and (3) suffered discrimination because of his disability.  *See Butler v. City of Prairie Village, Kan.*, 172 F.3d 736, 748 (10th Cir. 1999) (citations omitted).

If no direct evidence of discrimination exists, then the court utilizes the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (applying *McDonald* in the context of an ADA claim) (citation omitted).  Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  The burden then returns to plaintiff to show there is a genuine issue of material fact that the proffered reason was pretextual.  *Id.*

The City argues that there is no direct evidence of discrimination here and that the court should apply the *McDonald-Douglas* framework.  Plaintiff does not squarely address the issue; however, plaintiff's response addresses only the prima facie elements.  Regardless of whether the statement in the KS-CPOST report listing "sleeping on duty" as one of the reasons for plaintiff's termination is direct evidence of discrimination, the City has not shown it is entitled to summary judgment on this issue.

For the purposes of this motion, the City concedes that plaintiff is a qualified individual with a disability and there was an adverse employment action. But the City argues that there is no causal connection here because plaintiff was not fired because of his sleep apnea disability. To meet the third element, plaintiff must show that he "was terminated because of [his] disability, or that the [City] terminated . . . plaintiff under circumstances which give rise to an inference that the termination was based on [his] disability." *See Butler*, 172 F.3d at 748 (quotation and quotation marks omitted).

To show a causal connection, plaintiff "must provide some evidence that [his] disability was a determining factor" in the City's decision to terminate him. *See Bones*, 366 F.3d at 879. The City cites the *Bones* case in support of its argument that the fact that plaintiff's prior discipline for sleeping on duty was included in the summary and reasons for dismissal does not violate the ADA. But in *Bones*, there was no evidence at all that the plaintiff's termination was related to his disability. Here, a jury could reasonably infer a causal connection between plaintiff's termination and his disability because the undisputed evidence shows that McClarty included plaintiff's prior discipline for sleeping on duty in the reasons for his termination. This is especially true because after plaintiff was diagnosed with sleep apnea and then received medical treatment, he had no further incidents. Thus, it is unclear why McClarty listed that plaintiff fell asleep on duty as a reason for his termination.

For these reasons, there is a genuine issue of material fact as to whether plaintiff was terminated because of his alleged disability. The City is not entitled to summary judgment on this claim. *See Brown v. City of Salem*, No. 04-1541-HA, 2007 WL 671336, at *6 (D. Or. Feb. 27, 2007) (denying the defendant's motion for summary judgment on the plaintiff's ADA claim, finding that the plaintiff 911 Call Dispatcher who suffered from sleep apnea "was fired at least in part for falling asleep on the job" and noting that the defendant "acknowledge[d] that [the] plaintiff suffers from a disability for which this conduct is a symptom").

The City also argued that falling asleep is misconduct and that even if misconduct is related to a disability, the ADA is not implicated. In support of this argument, the City cites *Ray v. Kroger Co.*, 264 F. Supp. 2d 1221, 1228–29 (S.D. Ga. 2003), *aff'd*, 90 F. App'x 384 (11th Cir. 2003), in which the court found that the plaintiff, who suffered from Tourette's Syndrome, was not terminated on the basis of his disability because the plaintiff did not produce evidence that he was terminated for any reason other than his frequent outbursts of crude language and racial slurs. The court is not persuaded by this case—plaintiff's falling asleep on duty is quite unlike the misconduct associated with outbursts involving vulgar language and racial epithets. And the court in *Ray* clarified that, "[s]tated another way, '[a]n employee who is fired because of outbursts at work directed at fellow employees has no ADA claim.'" *Id.* (quoting *Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1052 (5th Cir. 1998)). The City has not satisfied its burden to show that there is no causal connection between plaintiff's termination and his sleep apnea. Again, the City is not entitled to summary judgment on this issue.

### D.  Count IV:  Defamation Claim

The court grants summary judgment in defendants' favor on plaintiff's defamation claim. A defamation claim includes the following elements: (1) "false and defamatory words"; (2) "communicated to a third person"; and (3) "which result in harm to the reputation of the person defamed." *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1293 (Kan. Ct. App. 1984) (citing *Gobin v. Globe Pub. Co.*, 649 P.2d 1239 (Kan. 1982)) (internal citations omitted). The court is not satisfied that plaintiff put forth sufficient evidence showing that these three elements are met.

Regardless, plaintiff appears to concede that a qualified privilege is available to McClarty for his statements made to the City Commission. This means that plaintiff must prove not only that McClarty's statements as a public official were false, but that they were made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Turner v. Halliburton Co.*, 722 P.2d 1106,

1112–13 (Kan. 1986). Plaintiff argues that McClarty is not entitled to the privilege because McClarty acted with actual malice, but plaintiff fails to cite to the record to show evidence of actual malice. Instead, plaintiff argues that "[t]he totality of Chief McClarty's intentional misrepresentations and omissions is evidence of an extrinsic nature clearly showing an intent to injure [p]laintiff by permanently destroying his law enforcement career." (Doc. 81 at 45.) Plaintiff lists some acts and omissions of defendant McClarty in support of his actual malice allegation, but plaintiff cites to no evidence in the record to support his claim. For these reasons, the court finds that summary judgment is appropriate in defendants' favor on plaintiff's defamation claim.

### E. Count VIII: KWPA Claim

On plaintiff's KWPA claim, the City contends that it terminated plaintiff for cause before he took any accrued vacation leave, so the City does not owe plaintiff wages as a matter of law. Plaintiff, on the other hand, alleges that he was actually taking approved vacation leave at the time he was terminated. The City also argues that plaintiff was terminated for cause, and so the City is not required to pay plaintiff for unused vacation time. A genuine issue of material fact exists as to whether plaintiff had already taken at least some of his scheduled vacation leave, or whether he was discharged before doing so. At this time, neither plaintiff nor defendant is entitled to summary judgment on this issue.

## IV. Conclusion

For the reasons above, the court grants summary judgment to defendants on Count IV, and grants summary judgment to defendant McClarty on Count I. The rest of defendants' motion is denied. The court denies plaintiff's partial summary judgment in its entirety.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 74) is denied in part and granted in part as described above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 72) is denied.

Dated this 7th day of July, 2014, at Kansas City, Kansas.

                                        s/ Carlos Murguia
                                        **CARLOS MURGUIA**
                                        **United States District Judge**