IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MATTHEW B. MICHAELS,              )
                                  )
                  Plaintiff,      )   **CIVIL ACTION**
                                  )
v.                                )   No.  13-1128-MLB
                                  )
CITY OF MCPHERSON, KANSAS,        )
                                  )
                  Defendant.      )
                                  )

**MEMORANDUM AND ORDER**

Before the court is defendant's motion for judgment as a matter of law (Doc. 136), plaintiff's response (Doc. 147), and defendant's reply (Doc. 148).

On October 14, 2014, the jury returned a verdict in plaintiff's favor on claims for deprivation of a liberty interest without due process of law, employment discrimination under the Americans with Disabilities Act (ADA), interference with Family Medical Leave Act (FMLA) rights, and violation of rights under the Kansas Wage Payment Act (KWPA). Judgment in the amount of $921,657.64 was entered in plaintiff's favor on October 15, 2014. (Doc. 129).

Defendant now moves for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) or, alternatively, for a new trial under Rule 59(a). The court will not restate the facts or evidence here, as the parties are thoroughly familiar with the case.

**I. Standards for Rule 50 and Rule 59 motions.**

The standards governing a motion under Rule 50(b) were recently set forth by the Tenth Circuit:

> Judgment as a matter of law "is appropriate if,

> after a party has presented its evidence, the 'court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.' " Henry v. Storey, 658 F.3d 1235, 1237–38 (10th Cir.2011) (quoting Fed.R.Civ.P. 50(a)(1)). Stated differently, it is "appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position." Elm Ridge [Exploration, Inc., LLC v. Engle, 721 F.3d 1199] at 1216 (internal quotation marks omitted). "We draw all inferences from the evidence in favor of the non-moving party, and do not weigh the evidence or judge witness credibility." Henry, 658 F.3d at 1238.

Crowell v. Denver Health and Hosp. Authority, 572 Fed.Appx. 650, 652 (10th Cir. 2014).

Under Federal Rule of Civil Procedure 59(a), by contrast, a court may grant a new trial on all or some of the issues on motion of a party "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Such a motion is committed to the sound discretion of the trial court and is granted with great caution. See United States v. Kelley, 929 F.2d 582, 586 (10th Cir. 1991). It is appropriate only where the claimed error substantially and adversely affects the rights of a party. See Sanjuan v. IBP, Inc., 160 F.3d 1291, 1297 (10th Cir. 1998).

**II. Arguments**.

1. <u>Whether statements in the CPOST report impugned plaintiff's good name</u>. The CPOST report written by Chief McClarty listed the following reasons for plaintiff's termination: "Argumentative with Superiors, insubordination, conduct unbecoming an Officer, sleeping on duty, numerous other circumstances and situations where he was no longer viable to be a Police Officer." Defendant contends that none

-2-

of these statements were capable of stigmatizing plaintiff's good name and plaintiff therefore failed as a matter of law to show the deprivation of a liberty interest. (Doc. 136 at pp. 5-8).

The Tenth Circuit recently summarized the law in this area:

> "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.' " Gwinn v. Awmiller, 354 F.3d 1211, 1216 (10th Cir. 2004) (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)). "Damage to one's reputation alone, however, is not enough to implicate due process protections." Id. The plaintiff must demonstrate: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that significantly altered [his or] her status as a matter of state law. Id. (quotation marks omitted).

Brokers' Choice of America, Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1149 (10th Cir. 2014). See also McDonald v. Wise, 769 F.3d 1202, 1212 (10th Cir. 2014).

At least two of the reasons listed in the CPOST report satisfied the threshold for a liberty interest claim. (As such the court need not address the other statements). The assertions that plaintiff engaged in "conduct unbecoming an officer" and "numerous other circumstances where he was no longer viable to be a police officer" were both sufficiently derogatory to call into question plaintiff's good name and reputation. An unexplained allegation of "conduct unbecoming an officer" implied that plaintiff engaged in some sort of immoral, dishonest or unseemly behavior. Cf. Swank v. Smart, 898 F.2d

-3-

1247, 1258 (7th Cir. 1990) ("it can be argued that when someone is dismissed for conduct unbecoming a policeman, if the department informs any other police department to which the officer applies concerning the ground on which he was fired, the effect will be to exclude him from police work as effectively as if the department had broadcast lurid charges against him on national television."). Similarly, the "numerous other circumstances" assertion cast a shadow on plaintiff's professional reputation. The vagueness of the comment, when viewed in context, only added to its ominous character and its potential to injure plaintiff's good name. Cf. McDonald, 769 F.3d at 1212 (statement that plaintiff was terminated because of "allegations of serious misconduct" supported claim). Contrary to defendant's assertion that the latter comment was merely an expression of opinion that was not capable of being true or false, the comment itself implied that plaintiff had engaged in conduct that rendered him unfit to be a police officer. Cf. Hogan v. Winder, 762 F.3d 1096, 1106 (10th Cir. 2014) (at common law, categories of defamation included statements imputing character showing unfitness for one's profession). The jury could have reasonably concluded that this comment was both stigmatizing and without factual support -- i.e. it was false. For example, one of the "other circumstances" cited by Chief McClarty at trial was that plaintiff had worn police cargo pants to a community event instead of regular uniform pants. When a supervisor pointed this out to plaintiff, he offered to go home and change, but the supervisor told plaintiff not to bother. A jury could reject as purely pretextual Chief McClarty's explanation at trial that this was a circumstance showing plaintiff was "no longer viable to be a police officer."

2. <u>Whether it was error to allow the jury to determine whether the statements were stigmatizing</u>. Defendant argues it was error to submit this issue to the jury because, according to defendant, <u>Melton v. City of Oklahoma City</u>, 928 F.2d 920 (10th Cir. 1991) (en banc) holds that whether a statement is sufficiently stigmatizing is a question of law for the court to decide. Doc. 136 at 10-11.

<u>Melton</u> did not forbid submission of the stigmatization issue to a jury. Rather, it said the issue before it fell into the realm of statements requiring an independent judicial examination to ensure that First Amendment principles were protected. See <u>Melton</u>, 928 F.2d at 928 ("we follow the mandate of <u>Bose</u> [<u>Corp. v. Consumers Union of United States, Inc.</u>, 466 U.S. 485 (1984)] and make an independent review of the record on the dispositive constitutional issue."). This type of review is necessary in cases involving the line between constitutionally protected free speech and speech that may be lawfully regulated. For example, "in cases involving the area of tension between the First and Fourteenth Amendments on the one hand and state defamation laws on the other, [the Supreme Court has] frequently had occasion to review 'the evidence in the ... record to determine whether it could constitutionally support a judgment' for the plaintiff." <u>Bose Corp.</u> 466 U.S. at 510. Such judicial review does not preclude submission of the issue to a jury; it means the court must independently review the evidence to ensure that the jury's determination is consistent with constitutional principles. See e.g. <u>Melton</u>, 928 F.2d at 927 ("Regarding certain largely factual questions in some areas of the law, the stakes ... are too great to entrust them finally to the judgment of the trier of fact.") [<u>quoting</u> <u>Bose</u>]; <u>Bose</u>

Corp., 466 U.S. at 511 ("The question whether the evidence in the record in a defamation case is of the convincing clarity required to strip the utterance of First Amendment protection is not merely a question for the trier of fact.").

Defendant articulates no constitutional infirmity in the judgment and the court's review shows none. Unlike the statements at issue in Melton, there is no genuine question here about who was the source of the stigmatizing statements. Moreover, to the extent Melton requires this court to independently determine whether a finding of stigmatization is consistent with constitutional principles, the court concludes that it is. The evidence indicates that the two statements discussed above were false. Under the evidence presented, the charge of conduct unbecoming an officer -- which arose because plaintiff complained about being denied leave to take his daughter to Kansas City for medical tests -- was as specious and factually unsupported as the assertion that his failure to wear the correct pants to the All Schools Day event made him unfit to be a police officer.

Defendant also complains that the jury instructions and verdict form did not require the jury to specify which statements were false and so it is not possible to say whether the jury found in plaintiff's favor on a statement that was not stigmatizing. Plaintiff was not required to show that all of the CPOST statements were false, however. Moreover, the general nature of the jury's verdict does not render it infirm. Nothing in the record suggests that the jury's verdict rests upon an improper or unsupported basis.

    3. <u>Whether the jury instruction on publication was in error</u>. Defendant argues that Tenth Circuit precedent requires a showing that

a statement was "made public" to satisfy the publication element. Defendant argues the court's instructions erroneously permitted a finding of publication without this requirement.

In denying summary judgment on the publication element, Judge Murguia cited case law from other circuits finding that the placement of stigmatizing information in a personnel file that was subject to disclosure or in a public record constitutes publication. See Doc. 85 at 8. As plaintiff points out, the availability and likely use of the CPOST report by other law enforcement agencies in Kansas makes this case comparable. Cf. Bishop v. Wood, 426 U.S. 341, 348 (1976) (statements were not made public where they were communicated to plaintiff in private). And Tenth Circuit case law, albeit unpublished, likewise suggests that disclosure of stigmatizing information to prospective employers may qualify as publication. See e.g. Sanchez v. Dubois, 291 Fed.Appx. 187, 191 (10th Cir. 2008)[1]. Given the substantial body of case law supporting this view, the court is not persuaded that the instruction on publication constituted error.

4. <u>Whether plaintiff was provided adequate due process</u>. Defendant next contends plaintiff had constitutionally adequate due process because he had a right to submit a written response to the CPOST report. The court concludes, however, that the mere right to submit a response to the CPOST report was not constitutionally adequate under the circumstances.

---

[1] Citing Brandt v. Bd. of Co-op. Educ. Svcs., Third Supervisory Dist., Suffolk Co., New York, 820 F.2d 41, 44-45 (2nd Cir. 1987) ("Courts of appeals for other circuits have similarly concluded that the public disclosure requirement has been satisfied where the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers.").

-7-

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). An adequate name-clearing hearing "gives the plaintiff an opportunity to hear and answer firsthand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation." McDonald v. Wise, 769 F.3d 1202, 1213 (10th Cir. 2014) (quoting Patterson v. City of Utica, 370 F.3d 322 (2nd Cir. 2004)). In evaluating the sufficiency of the process, the court must examine: (1) the nature of the interest affected by the official action; (2) the government's interest; and (3) the risk of error and the effect, if any, of additional safeguards. Id.

Under these factors the mere right to respond in writing to the City's asserted reasons for termination was not adequate to allow plaintiff to effectively clear his name. In the circumstances of this case plaintiff was at least entitled to have the City or some other fact-finder hear plaintiff's side of the story and determine whether the stigmatizing allegations were true. As plaintiff points out, the very purpose of a name-clearing hearing is to resolve the dispute concerning the claimed falsity of the stigmatizing reasons for termination. Plaintiff could not effectively vindicate his name or reputation without a resolution of his claim that the statements made about him were false. Cf. McDonald, 769 F.3d at 1214 (due process may require hearing before governing body that discharged the plaintiff or before an adequate substitute tribunal).

5. Whether the instruction stating that the jury must find that "some or all of the statements were false" was improper. Defendant

argues the instruction was error because in determining whether a statement is truthful, "the court must view a publication in its entirety." Doc. 136 at 15 (citing Melton, 928 F.2d at 929).

Defendant does not assert that <u>all</u> of the statements in the CPOST report must have been false in order to support a claim, nor does defendant explain how the court's instruction could have caused the jury to find a false statement where there was none. Moreover, defendant's position is hindered rather than helped by reliance on Melton's admonition about considering statements in context. Cf. Melton, 928 F.2d at 929. For example, the reference in the CPOST report to plaintiff "sleeping on the job" was, standing alone, a true statement. But in context it was misleading because it omitted the fact that this conduct occurred long before plaintiff's termination, it resulted from a diagnosed medical condition, and the problem disappeared without recurrence once plaintiff obtained medical treatment. To include this fact in the CPOST report as a reason for termination is misleading at best. And to give other prospective law enforcement employers the impression that plaintiff was terminated because his sleeping on the job rendered him unable at the time of termination to perform the essential duties of a police officer was, in context, a false representation. Defendant has shown no prejudice or error with respect to the instruction.

6. <u>Whether there was evidence of a municipal policy that caused a deprivation of plaintiff's constitutional rights</u>. Defendant argues there was no such evidence, although the basis for its argument is not clear. Doc. 136 at 16-18. As near as the court can tell, defendant argues that no city policy caused Chief McClarty's statements in the

CPOST report and the city did not ratify the chief's statements because the city assumed those statements to be true. Doc. 136 at 19.

In Palmer v. City of Monticello, 31 F.3d 1499 (10th Cir. 1994), a chief of police asserted before a city commission that Palmer, a city police officer, had falsified a speeding ticket. The commission heard evidence on the matter and voted to terminate Palmer. The Tenth Circuit concluded that the city commission had "adopted the accusation against Palmer," Palmer, 31 F.3d at 1503, n.2, and upheld a jury verdict finding the city liable for deprivation of a liberty interest without due process. More recently, the circuit reiterated that a government employer may be required to hold a name-clearing hearing "if it adopts or ratifies statements made by a third party." Rogers v. Alezopulos, 549 Fed.Appx. 771, 774-75 (10th Cir. 2013). In the instant case, it is clear that the City of McPherson adopted Chief McClarty's stated reasons for plaintiff's termination and thereby caused or authorized the chief to state those reasons in the CPOST report. Thereafter, due to a city policy or practice, plaintiff was denied a due process right to have a name-clearing hearing. The deprivation of this right to a hearing was in fact caused by a city policy and therefore satisfies the requirements of Monell v. Dept. of Social Svcs. Of City of New York, 436 U.S. 658 (1978). See McDonald, 769 F.3d at 1215 (city liable for mayor's failure to provide name-clearing hearing).

7. Whether the city was aware of plaintiff's disability. Defendant argues it cannot be liable under the ADA because neither Chief McClarty nor the city commission was aware of plaintiff's disability. This argument, however, fails to view the evidence in the

light most favorable to plaintiff. There was evidence from which the jury could have reasonably concluded that McClarty was aware of plaintiff's condition. There was evidence that the prior chief as well as Chief McClarty had knowledge of plaintiff's asserted medical condition, his resulting symptoms, and his successful medical treatment of the symptoms. Cf. Robertson v. Las Animas County Sheriff's Dept., 500 F.3d 1185, 1196 (10th Cir. 2007) (genuine issue of fact regarding whether defendants knew of disability). Despite his knowledge that plaintiff had no such symptoms after obtaining medical treatment, Chief McClarty recommended termination of plaintiff on account of having slept on the job. The chief's recommendation caused the city to terminate plaintiff. This chain of events was sufficient to establish a claim for discrimination on account of a disability. See E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 487 (10th Cir. 2006) (a causal connection is required; the issue is whether a biased subordinate's recommendation caused the adverse employment action).

     8. Whether plaintiff was terminated for cause. Defendant argues it is entitled to judgment on plaintiff's claim under the Kansas Wage Payment Act because plaintiff was terminated for cause. Doc. 136 at 23. The city's assertion that the termination was for cause, however, is not proof of that fact. The court instructed the jury that "'for cause' means for fair reasons justifying termination and not for arbitrary or discriminatory reasons." The jury had a substantial evidentiary basis for concluding that defendant's stated reasons for terminating plaintiff were arbitrary and did not justify the dismissal. The jury's additional finding of willfulness is supported

-11-

by that same evidence. Viewing the evidence in the light most favorable to plaintiff, the jury could conclude that the city's failure to pay plaintiff the wages he had earned was a purposefully wrongful act.

9. <u>Whether the city is entitled to judgment on the FMLA interference claim</u>. Defendant argues judgment should be entered in its favor on plaintiff's FMLA interference claim because plaintiff suffered no monetary damage from the city's wrongful denial of FMLA leave. Plaintiff concedes the lack of monetary loss, but argues this does not warrant judgment in defendant's favor. The court agrees. Section 2617(a)(1)(B) makes an employer who violates the FMLA liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." Even absent monetary damage, the court concludes that plaintiff is entitled in these circumstances to a judgment declaring that defendant's actions violated his FMLA rights. <u>Cf</u>. 28 U.S.C. § 2201. Such an equitable judgment, which serves to vindicate the purposes of the FMLA, entitles plaintiff to a reasonable attorney's fee and other costs. 29 U.S.C. § 2617.

**III. Conclusion**.

The court finds no grounds warranting judgment as a matter of law in defendant's favor or warranting a new trial. No prejudicial error has been shown, and the jury's verdict is supported by substantial evidence. Accordingly, defendant's motion for judgment as a matter of law or for new trial (Doc. 136) is denied.

IT IS SO ORDERED.

Dated this 2nd day of December 2014, at Wichita, Kansas.

s/Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE

-13-